**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICOPTERS, LLC,
                   *Plaintiff-Appellant,*

v.

FEDERAL AVIATION ADMINISTRATION,
                   *Defendant-Appellee.*

No. 04-15097

D.C. No.
CV-03-00005-JSU

JAN'S HELICOPTER SERVICE, INC.,
                   *Plaintiff-Appellant,*

v.

FEDERAL AVIATION ADMINISTRATION,
                   *Defendant-Appellee.*

No. 04-15098

D.C. No.
CV-03-00002-JSU

AMERICOPTERS, LLC,
                   *Petitioner,*

v.

FEDERAL AVIATION ADMINISTRATION,
                   *Respondent.*

No. 04-70330

FAA No.
03-00005

JAN'S HELICOPTER SERVICE, INC.,
                   *Petitioner,*

v.

FEDERAL AVIATION ADMINISTRATION,
                   *Respondent.*

No. 04-70348

FAA No.
03-00002

OPINION

Appeal from the United States District Court
for the District of Guam
John S. Unpingco, District Judge, Presiding
and
On Petition for Review from
Orders of the Federal Aviation Administration

Argued and Submitted
November 21, 2005—Honolulu, Hawaii

Filed March 21, 2006

Before: Myron H. Bright,* M. Margaret McKeown, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge McKeown

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

## COUNSEL

David P. Ledger and Elyze J. McDonald, Carlsmith Ball LLP, Hagåtña, Guam, for the appellants.

Kenneth G. Caplan, Special Attorney to the United States Attorney General, San Diego, California, for the appellee.

## OPINION

McKEOWN, Circuit Judge:

Jan's Helicopter Service, Inc. ("Jan's") and Americopters, LLC ("Americopters") filed petitions for review under 49 U.S.C. § 46110, requesting relief from the actions of certain officials of the Federal Aviation Administration ("FAA") that, according to the flight services, had the effect of halting their flight operations. In separately filed appeals based on the same facts, Jan's and Americopters challenge the district court's dismissal of their complaints for lack of jurisdiction

under § 46110, which vests in the court of appeals exclusive jurisdiction to review FAA final orders.

We dismiss the petitions for lack of jurisdiction because they were untimely filed without reasonable grounds for delay. As to the appeals, with one exception, the district court correctly dismissed the claims for lack of jurisdiction; the court erred in dismissing the constitutional claims for damages based upon allegations that the FAA's actions effected a taking of property in violation of the Due Process Clause.

## BACKGROUND

Jan's and Americopters are not related by common ownership, although they share the same attorney and face similar legal issues. The FAA and district court addressed their nearly identical claims together, and their petitions and appeals have been consolidated before us. For the sake of clarity, we first describe the factual background of each company before reviewing their common history and legal claims before the FAA and district court.

### I.  JAN'S AND THE ZEIGLER EMAIL

Jan's owns a de Havilland Caribou DCH-4A ("Caribou") transport plane that is registered in the Philippines. The Caribou is used to transport helicopters, also owned by Jan's, that are rented or leased by various commercial fishery operators in Micronesia to search for tuna. Sometime in 2000, Jan's asked the U.S. Department of Transportation ("DOT") what authorization it needed to fly the foreign-registered Caribou out of the Guam Airport. The DOT replied that if Jan's owned, operated and crewed the Caribou itself "the operation would be authorized by regulation under [14 C.F.R. §] 375.30, and no additional DOT operating authority would be required." Jan's took this statement to mean that it could fly the Caribou out of Guam Airport without any advance DOT or FAA authorization "so long as there was a unity of owner-

ship between the Caribou and the helicopter being transported."

In July 2002, Guam Airport officials told Lewis Zeigler, regional FAA Aviation Safety Inspector, that a Philippine-registered Caribou was using the Guam Airport as a base from which to haul helicopters to other Pacific islands. On July 31, 2002, Zeigler sent an email ("Zeigler Email") to the Guam Airport:

> What can you tell me about a Philippine registered Caribou (DHC-4) that is supposed to be based on Guam and flying around the islands? Supposedly it used to be a U.S. registered aircraft and is hauling some small helicopters that are used on fishing boats. Whoever it is they aren't authorized to operate there.

Though the email clearly referred to Jan's Caribou, Jan's did not receive a copy of the message from the FAA, Zeigler or the Guam Airport. Less than two weeks later, as Jan's Caribou was preparing to taxi for take off, the Guam Airport denied ramp access, effectively grounding the aircraft.

Jan's immediately wrote to the FAA requesting a hearing to challenge the grounding of its Caribou without prior notice. Jan's argued that the Zeigler Email was a final FAA order that in effect denied Jan's ramp access without any notice or opportunity to be heard as required by FAA regulations 14 C.F.R. § 13.20(b)[1] and (c).[2] Jan's also asked for rescission of

---

[1]"Unless the Administrator determines that an emergency exists and safety in air commerce requires the immediate issuance of an order under this section, the person subject to the order shall be provided with notice prior to issuance."

[2]"Within 30 days after service of the notice [as required by §13.20(b)], the person subject to the order may reply in writing or request a hearing in accordance with Subpart D of this part."

the directive, as well as actual and consequential damages for the loss of contract revenues that resulted from the grounding of the Caribou.

On August 23, 2002, the FAA's Regional Counsel, Monroe Balton, sent a "preliminary finding," indicating that Zeigler never directed the Guam Airport or anyone else to deny ramp access to Jan's Caribou. However, Balton also wrote that Jan's needed to apply for a permit to continue flying the Caribou.

## II.   AMERICOPTERS AND THE KANAE LETTER

Until June 2002, Americopters ran a helicopter tour business from a rooftop helipad at a restaurant, Chuck's Steak House ("Chuck's"), in Guam. In February 2002, Clarence Kanae, Principal Operations Inspector for the FAA's regional flight standards office, inspected the helipad at Chuck's. According to Americopters, during that visit, Kanae verbally identified a number of deficiencies of the helipad but never documented these concerns. Americopters asked Kanae to "clarify and confirm . . . all of the changes that you would like us to make to  . . . Chuck's" and provided him a list of improvements Americopters intended to make.

Americopters received no response from Kanae until four months later on June 24, 2002 ("Kanae Letter"):

> This letter is to inform you that the use of the roof top as a helicopter-pad, at Chuck's Steak House, is considered unsafe, and does not meet the [FAA] Advisory Circular 150-5390-2A Heliport Design requirements. This AC is [a]dvisory in nature; however, this office feels that [14 C.F.R. § 91.13] will apply to this operation if the AC is not followed. Therefore, this office is requiring that your company immediately cease use of the Chuck's Steak House rooftop for all flight operations.

Americopters wrote to Kanae's manager protesting that it had written Kanae in February 2002 and "agree[d] 100% to *each* and *every* change . . . requested," but that Kanae failed to respond and, instead, summarily banned Americopters from flying from Chuck's rooftop.

On August 13, 2002, Americopters wrote to the FAA alleging that the Kanae Letter ordered it to cease operations without prior notice in violation of 14 C.F.R. § 13.20(b). Americopters requested rescission of the cease operations order, confirmation that planned improvements to the helipad at Chuck's would comply with FAA regulations, and 90 days to install improvements approved by the FAA. In the alternative, Americopters requested a hearing under § 13.20(c).

## III.  FURTHER ADMINISTRATIVE PROCEEDINGS

As the district court put it, at the core of this case is a "bureaucratic snag." Bureaucratic roadblock may be more apt. Jan's and Americopters now find themselves in a sort of procedural limbo or netherworld, largely the making of the FAA —first insisting that it did not issue final orders, so as to avoid holding administrative hearings under its own regulations; then arguing that it did issue final orders for purposes of obtaining a dismissal for lack of jurisdiction before the district court; and now, before us, contending again that it did not issue final orders, thus depriving this court of jurisdiction. Jan's and Americopters, to be sure, contributed to this mess by taking their own wrong turns in litigating this case, though their uncertainty is not unsurprising given the way the FAA addressed their claims.

The procedural confusion began on September 19, 2002, when Jan's and Americopters, sharing the same counsel, received one letter from FAA Regional Counsel Monroe Balton. He denied their respective requests for hearings under § 13.20(c) on the basis that the Zeigler Email and Kanae Letter were not actually orders issued by the FAA. Balton

pointed to FAA regulations, which state that only the Administrator and specific FAA officers[3] have the authority to issue an order under the FAA's legal enforcement regulations (Subpart C of Part 13), at 14 C.F.R. §§ 13.13-13.29. Since neither Zeigler nor Kanae had the authority to issue grounding or cease-and-desist orders, "[n]o such orders were issued." Thus, according to Balton, without orders to challenge, Jan's and Americopters were not entitled to hearings under § 13.20(c).

It is necessary to pause and emphasize how much the Balton Letter exacerbated the difficult situation already created by the Zeigler Email and Kanae Letter. Jan's and Americopters had stopped their respective flight operations at the behest of FAA officials. By relying upon the dictates of FAA employees as the official word of the FAA, Jan's claimed to have defaulted on a contract because of the Zeigler Email, and Americopters allegedly lost business running helicopter tours by complying with the Kanae Letter. But then came the Balton Letter, which told Jan's and Americopters that, officially, the FAA had issued no orders and had done nothing at all, and that any harm was self-inflicted. The FAA turned an old legal maxim on its head, telling Jan's and Americopters: no foul, no harm.

At this point, Jan's and Americopters made their own contribution to the procedural morass. They both submitted complaints under 14 C.F.R. § 13.5 to the FAA's Chief Counsel alleging that Zeigler and Kanae had acted outside of the scope of their employment. They filed these complaints even though

---

[3]*See* FAA Order 2150.3A para. 1209(b). The substance of this FAA order is contained in FAA regulations. *Compare* 14 C.F.R. § 13.20(*l*) ("[T]he authority of the Administrator under this section is also exercised by the Chief Counsel, Deputy Chief Counsel, each Assistant Chief Counsel, each Regional Counsel, and the Aeronautical Center Counsel . . . .") *with* § 13.20(a) ("This section applies to orders of compliance, cease and desist orders, orders of denial, and other orders *issued by the Administrator* to carry out the provisions of the Federal Aviation Act") (emphasis added).

the Balton letter had preemptively discouraged them from doing so, indicating that the § 13.5 procedures could not be used to challenge the actions of FAA employees taken within the scope of their employment.

On November 22, 2002, the FAA denied Jan's § 13.5 request, noting that Zeigler had acted within the scope of his employment with the FAA. The FAA also took the position that the Zeigler Email was not an order, and that Zeigler was not responsible for the Guam Airport's decision to ground Jan's Caribou. On December 7, 2002, the FAA wrote to Americopters, noting that it was considering whether a § 13.5 hearing was in order and promising to send a final reply in a week. Despite follow-up inquiries, Americopters received no other response to its request for a § 13.5 hearing.

## IV. DISTRICT COURT PROCEEDINGS

On February 4, 2003, Jan's filed a complaint in district court, and on February 18, 2003, Americopters followed suit. The complaints, like the previous letters, alleged that the FAA had violated its own regulations because unauthorized officials had issued orders that halted flight operations without "prior notice and an opportunity to respond" as required by 14 C.F.R. § 13.20(b). The complaints requested rescission of the purported FAA orders—both the Zeigler Email and the Kanae Letter.

Unlike the earlier letters to the FAA, these complaints requested penalties and fines pursuant to FAA regulations, 14 C.F.R. §§ 13.15 and 13.16. The more important novelty of the district court complaints, however, is that they sought damages based on constitutional violations. Jan's alleged that Zeigler's grounding order was unauthorized and "constitute[d] a violation of the due process requirements under Amendment V . . . by unlawfully taking Jan's property." Americopters similarly alleged that "Mr. Kanae's unauthorized cease and desist order dated June 24, 2002 constitutes

a violation of due process under Amendment V . . . and therefore, an illegal taking of Americopters' property." Americopters also alleged that the FAA's failure to answer its request for a § 13.5 hearing also constituted an illegal taking of property.

The FAA moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on the grounds that, under 49 U.S.C. § 46110, only a circuit court has jurisdiction to review FAA orders. Though it maintained that the Zeigler Email and Kanae Letter were not actually final orders, the FAA made the seemingly contradictory argument that, for purposes of the motion to dismiss, the district court was compelled to accept as true all allegations made in the complaints.[4] According to the FAA, the complaints alleged that the Zeigler Email and Kanae Letter were final orders and, thus, § 46110 barred review by the district court.

The district court granted the FAA's motion to dismiss, holding that the Zeigler Email and Kanae Letter were final orders and that jurisdiction over claims based upon violation of FAA regulations was "vested exclusively in the Ninth Circuit as mandated by Section 46110(a)." In addition, citing *Mace v. Skinner*, 34 F.3d 854, 858 (9th Cir. 1994), and *Foster v. Skinner*, 70 F.3d 1084 (9th Cir. 1995), the district court held it had no jurisdiction to consider the due process claims raised by the complaints because they "[did] not constitute broad constitutional challenges to the FAA's practices," and were " 'inescapably intertwined with a review of the procedures and merits surrounding the FAA's order[s].' "

---

[4]Of course, unlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined by the facts contained in the four corners of the complaint—it may consider facts and need *not* assume the truthfulness of the complaint. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Nor was the district court precluded from making a legal judgment as to the finality of the FAA's actions and consequently as to its jurisdiction over the claims.

On January 13, 2004, Jan's and Americopters filed notices of appeal, along with petitions for review, with this court.

## DISCUSSION

The sole issue before us is jurisdiction. We first consider whether we have jurisdiction over Jan's and Americopters' petitions for review, and then we determine whether the district court has any "residual" jurisdiction over their respective complaints.

### I.  APPELLATE JURISDICTION: PETITIONS FOR REVIEW

**[1]** We have direct and exclusive jurisdiction over the review of FAA final orders under 49 U.S.C. § 46110, which provides in relevant part:

> (a)   Filing and venue.— . . . [A] person disclosing a substantial interest in an order issued by . . . the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator[ ] in whole or in part under this part, part B, or subsection (l) or (s) of section 114 may apply for review of the order by filing a petition for review in . . . the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.
> . . .
>
> (c)   Authority of court.—When the petition is sent to the Secretary, Under Secretary, or Administrator, the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may

order the Secretary, Under Secretary, or Administra-
tor to conduct further proceedings. . . .

Although this statute has its intricacies, for the purpose of
determining our jurisdiction, a single part of the statute is
dispositive—§ 46110. This provision bars us from hearing
petitions filed later than 60 days after the issuance of the chal-
lenged FAA final order.

**[2]** The parties' briefs focus on the finality or lack of final-
ity of the FAA correspondence and whether the communica-
tions can be characterized as FAA orders. Because Jan's and
Americopters filed their petitions much later than 60 days
after the purported final orders were issued, it is unnecessary
for us to address whether either the Zeigler Email or the
Kanae Letter are, in fact, final FAA orders. Jan's learned of
the Zeigler Email on August 9, 2002,[5] and 60 days later was
October 8, 2002. The Kanae Letter was sent on June 24, 2002,
and 60 days later was August 23, 2002. The petitions for
review were not filed until January 2004, almost one-and-a-
half years after the purported FAA orders were issued.

Jan's and Americopters concede, as they must, that their
petitions were untimely but argue that they had reasonable
grounds for delay because they attempted to exhaust adminis-
trative remedies before filing their petitions.

**[3]** A court of appeals "may allow the petition to be filed
after the 60th day only if there are reasonable grounds for not
filing by the 60th day." 49 U.S.C. § 46110(a); *see also Sierra
Club v. Skinner*, 885 F.2d 591 (9th Cir. 1989). We have sug-

---

[5]The Zeigler Email was submitted to the Guam Airport on July 31,
2002. Jan's did not receive notice of the email until August 9, 2002, when
the Airport denied ramp access. As a result, the 60-day period was tolled
until August 9, 2002. *See Nat'l Air Transp. Ass'n v. McArtor*, 866 F.2d
483, 485 (D.C. Cir. 1989) (holding that a defect in notice by the FAA
"do[es] no more than toll the statutory time limit").

gested before that an attempt to exhaust remedies may be a reasonable ground for delay. *See Watson v. Nat'l Transp. Safety Bd.*, 513 F.2d 1081, 1082 (9th Cir. 1975) ("Even if we assume that the sixty day statute of limitations . . . [is] tolled . . . when [petitioner] erroneously filed his petition with the NTSB, the filing was yet several years overdue."). The Eighth Circuit has explicitly recognized exhaustion as a reasonable ground under § 46110(a). *See Reder v. FAA*, 116 F.3d 1261, 1263 (8th Cir. 1997) (holding that an "unsuccessful attempt to exhaust administrative remedies . . . was a reasonable ground for not filing [an] appeal . . . by the sixtieth day."). Crediting the lapse of time necessary for exhaustion is all the more important when the FAA advises a petitioner to pursue administrative remedies. *Id.* (exercising appellate jurisdiction under § 46110 in part because "the FAA specifically told [petitioner] that appealing to the NTSB was the appropriate next step").

Here, Jan's and Americopters requested hearings with the FAA on August 13, 2002, before their respective 60-day periods expired. On September 19, 2002, the FAA issued a "final response" and rejected the requests to convene FAA hearings under § 13.20(c). Using the generous assumption that a reasonable ground for delay *re-starts* the 60-day period instead of tolling it,[6] Jan's and Americopters should have filed petitions for review with this court by November 18, 2002 (60 days after September 19, 2002). They did not file their petitions for review until January 2004.

The residual issue is whether the further delay—from November 2002 to January 2004—was based upon reasonable grounds. We hold that it was not.

---

[6]*Reder* suggests that the "reasonable grounds" clause re-starts the 60-day period instead of tolling it. *See* 116 F.3d at 1262-63. We need not take a definitive position here because this calculation does not affect the outcome of our analysis.

Although a delay resulting from the exhaustion of applicable administrative remedies may be a reasonable ground for delay, *see Reder*, 116 F.3d at 1263, an attempt to exhaust the wrong remedy is not. That is, a delay stemming from the filing of a petition or complaint with the wrong court is not, in general, a reasonable ground for delay. *See Sierra Club*, 885 F.2d at 593. A delay is even less excusable when the FAA advised the petitioner of the correct remedies or procedures to follow, *see id.* at 593-94 (holding that no reasonable grounds for delay existed when the petitioner filed a complaint in the district court despite the FAA's advice to file in the court of appeals), and when the petitioner's procedural missteps were based on a misapprehension of the law. *See id.* at 594 ("We find it difficult to believe that someone among [petitioner's] legal advisers did not sound a note of caution as to jurisdiction.").

At the point the FAA refused their requests for hearings under § 13.20(c)— September 19, 2002—Jan's and Americopters had exhausted their administrative remedies. Instead of timely filing petitions for review with this court, they decided to try another administrative route. From late September 2002 until February 2003, Jan's and Americopters awaited their pending requests before the FAA for hearings under the § 13.5 complaint procedure. The FAA explicitly warned Jan's and Americopters that, in its view, the § 13.5 complaint procedure "does not apply to complaints against the Administrator or complaints against FAA employees acting within the scope of their employment." In their § 13.5 complaints, Jan's and Americopters alleged that the FAA employees acted outside the scope of their employment.

**[4]** We need not decide whether Jan's and Americopters were unreasonable in taking the § 13.5 route—clearly they were not required to do so—for the ultimately fatal detour took place when they filed complaints with the district court. We have held that filing in the wrong court is not a reasonable ground for delay. *See Sierra Club*, 885 F.2d at 593 (refusing

jurisdiction because petitioner delayed by initially "fil[ing] for judicial review of the FAA action in the wrong court"). Only after the district court dismissed their claims in December 2003 did Jan's and Americopters finally file petitions for review with us.

**[5]** To be sure, idleness did not cause Jan's and Americopters to miss their deadlines. But their quixotic pursuit of the wrong remedies was not a reasonable ground for delay. Thus, even assuming the Zeigler Email and Kanae Letter were final orders, and even granting the petitioners a generous tolling for exhausting their initial administrative challenges, their petitions were filed almost a year after their adjusted 60-day deadlines. Consequently, we have no jurisdiction to consider the petitions for review filed by Jan's or Americopters.

## II.  DISTRICT COURT JURISDICTION

Jan's and Americopters assert that the district court had jurisdiction over their claims under 28 U.S.C. § 1331. In rejecting jurisdiction, the district court analyzed two sets of claims separately. All direct challenges to the Zeigler Email and Kanae Letter were dismissed as preempted by the exclusive jurisdiction provision of § 46110. The district court also dismissed the constitutional claims for damages holding that, though not directly preempted by § 46110, such claims were "inescapably intertwined" with the procedures involved in a direct review of the Zeigler Email and Kanae Letter.

### A.  CLAIMS PREEMPTED BY § 46110

**[6]** Section 46110 does not grant the court of appeals direct and exclusive jurisdiction over every possible dispute involving the FAA. The statute covers claims involving "aviation duties and powers designated to be carried out by the Administrator" and orders issued pursuant to "this part, part B, or subsection (l) or (s) of section 114." 49 U.S.C. § 46110(a). Subject matter is a necessary but not sufficient condition for

exclusive appellate jurisdiction. Another important dimension of § 46110 must also be considered—the statute allows us to grant only certain kinds of remedies. Under § 46110(c), we have jurisdiction if the petitioner requests that we "affirm, amend, modify, [or] set aside any part of the order," or remand to the FAA for further proceedings. By contrast, we have no jurisdiction to grant other remedies, such as damages. *See Mace*, 34 F.3d at 858. Thus, there are certain claims challenging FAA actions over which the district court may have residual jurisdiction because § 46110 does not explicitly allow us to hear them.

Jan's and Americopters argue that all their claims fall within this residual space and that § 46110 does not preempt district court jurisdiction. In particular, they argue that the Zeigler Email and Kanae Letter were non-final orders, that § 46110 does not grant us jurisdiction to hear non-final orders, and that the district court has jurisdiction over such claims. This argument is based on a mistaken assumption— that because finality is a predicate to our jurisdiction over an FAA order, *see S. Cal. Aerial Advertisers' Ass'n v. FAA*, 881 F.2d 672, 675 (9th Cir. 1989), its absence necessarily must confer jurisdiction upon the district court.

The issue of finality leaves Jan's and Americopters somewhere between Scylla and Charybdis. The dilemma is this: if the Zeigler Email and Kanae Letter are final orders relating to "aviation duties and powers," § 46110 preempts the district court from considering these claims. But if they are not final, then the Administrative Procedure Act ("APA") bars the district court from hearing the case for lack of jurisdiction.[7] *See* 5 U.S.C. § 704.

---

[7]Jan's and Americopters claim that the FAA raised this ripeness argument for the first time on appeal and thus it should be deemed waived. Because we must consider any potentially dispositive jurisdictional issues sua sponte, we are compelled to consider this argument. *See S. Cal. Aerial*, 881 F.2d at 675.

**[7]** The finality requirement comes from two sections in the APA. An "order" is defined as " 'the whole or a part of a final disposition . . . of an agency in a matter other than rule making.' " *Air Cal. v. U.S. Dep't of Transp.*, 654 F.2d 616, 620 (9th Cir. 1981) (citing 5 U.S.C. § 551(6)). The APA only allows judicial review of "final agency actions." 5 U.S.C. § 704. Thus, if an FAA order is not final, neither we nor the district court have jurisdiction over the case. *See Air Cal.*, 654 F.2d at 622 (holding that this court lacked jurisdiction under § 46110 for lack of finality, and that the district court also lacked jurisdiction because the orders were not final and thus not ripe for review). As a result of the finality conundrum, the district court has no jurisdiction over the direct challenges to the Zeigler Email and Kanae Letter.

## B. CONSTITUTIONAL CLAIMS FOR DAMAGES

**[8]** Section 46110 does not bar all manner of review of FAA orders by the district court. *See Mace*, 34 F.3d at 859-60 ("[N]owhere did we say or imply that a district court could never exercise federal question jurisdiction over any action brought against FAA, NTSB, and/or DOT officials; rather, we declared that the district court's federal question jurisdiction is preempted by [§ 46110] as to those classes of claims reviewable under [§ 46110].") (internal quotation and alterations omitted) (citing *Clark v. Busey*, 959 F.2d 808, 811 (9th Cir. 1992)). In principle, a district court may decide a claim for damages because § 46110 does not grant the court of appeals jurisdiction over this form of relief. *See Mace*, 34 F.3d at 858 (noting that a claim for damages is not found in the precursor to § 46110(c)); § 46110(c) (providing the court of appeals with exclusive jurisdiction to "affirm, amend, modify, or set aside any part of the order and [the power to] order the . . . [FAA] Administrator to conduct further hearings").

**[9]** In practice, we have developed a body of case law that limits the jurisdiction of the district court, barring it from hearing a damages claim that is "inescapably intertwined with

a review of the procedures and merits surrounding the FAA's order." *Crist v. Leippe*, 138 F.3d 801, 803 (9th Cir. 1998) (internal quotation marks and citations omitted); *accord Tur v. FAA*, 104 F.3d 290, 292 (9th Cir. 1997). The purpose of this restriction is to prevent litigants from using a damages claim as a collateral attack on a pending FAA order, *see Crist*, 138 F.3d at 804, and to allow courts to identify and dismiss damages claims that are actually "thinly disguised attempt[s] at an end-run around the jurisdictional limitation imposed by [§ 46110]." *Mace*, 34 F.3d at 860.

The collateral attack doctrine prevents plaintiffs from crafting constitutional tort claims either as a means of "re-litigat[ing] the merits of the previous administrative proceedings," *Tur*, 104 F.3d at 292, or as a way of evading entirely established administrative procedures. *See Green v. Brantley*, 981 F.2d 514, 517, 521 (11th Cir. 1993) (holding that district court had no jurisdiction over *Bivens* claims challenging an FAA order where "neither [plaintiff] nor his attorney . . . pursued the matter through any appeal to the FAA Administrator or otherwise"). But a damages claim is not "inextricably intertwined" with an FAA order and the procedures surrounding it—and thus may be heard by a district court—if the claim "constitute[s] a broad challenge to the allegedly unconstitutional actions of the FAA," *Mace*, 34 F.3d at 858,[8] and is not a claim merely "based on the merits of [an] individual situation." *Id.* at 859.

**[10]** The district court concluded that the "inescapably intertwined" doctrine prevented it from hearing Jan's and Americopters' damages claims. We hold that the collateral

---

[8]*See Crist*, 138 F.3d at 802-03, 805 (holding that district court had jurisdiction over claims that the FAA violated due process by spoiling evidence during the pendency of the plaintiff's hearings before the FAA); *Foster*, 70 F.3d at 1086-88 (holding that district court could hear Fifth Amendment claims that the FAA lacked authority to suspend or revoke pilot certificates and Sixth Amendment claims that such suspensions and revocations violated right to jury trial); *Mace*, 34 F.3d at 860 (same).

attack doctrine does not preclude district court jurisdiction over the damages claims in the unusual circumstances presented here.

**[11]** We note first that there is a conceptual, perhaps even existential, problem with applying the collateral attack doctrine to the facts here—there is nothing to collaterally attack. There are no pending or "live" FAA orders because the FAA renounced the Zeigler Email and Kanae Letter as issued by unauthorized officials.[9] The *Mace* line of cases did not contemplate or anticipate the strange situation here. Our collateral attack cases all assume an FAA order currently in place—that is, not an action withdrawn or repudiated by the FAA before judicial review. *See Tur*, 104 F.3d at 291-92; *Foster*, 70 F.3d at 1086-87; *Mace*, 34 F.3d at 856-57. Here, the FAA repudiated the authority of Zeigler and Kanae to issue orders on behalf of the FAA long before Jan's and Americopters' challenges reached any court. Even if the Zeigler Email and Kanae Letter were final orders when issued, there can be no dispute that they are no longer pending FAA orders against Jan's or Americopters. A damages claim in district court is not fairly characterized as an "end-run" around an order—or the procedures and merits surrounding it—if the order is no longer pending or, for lack of a better word, "live." *Cf. Mace*, 34 F.3d at 860.

The Fifth Circuit considered a similar set of facts in *Zephyr Aviation, LLC v. Dailey*, 247 F.3d 565 (5th Cir. 2001). Its analysis and resolution are pertinent here. In *Zephyr*, FAA inspectors summarily placed notices on an aircraft owned by Zephyr, effectively grounding it. Sometime later, FAA offi-

---

[9]*See, e.g.*, Americopters Compl. ¶ 14 ("On September 19, 2002, the Office of the Regional Counsel [a duly authorized FAA official] denied Americopters' request for a hearing on quintessential 'catch 22' grounds: since Mr. Kanae had 'no authority' to issue the § 13.20 cease and desist order, it is 'not really an order' . . . and therefore, Americopters is not entitled to the hearing . . . .").

cials told Zephyr's attorneys that, despite the placement of notices on the aircraft, "the Jet's airworthiness certificate had never been revoked," but nevertheless insisted that the jet was not airworthy. After Zephyr followed measures required by FAA officials to make the jet airworthy, the "FAA retracted the condition notice in a letter to Zephyr." *Id.* at 569. Zephyr then brought a damages claim in district court, alleging that the actions of "two FAA inspectors [were] tantamount to an illegal taking of property.' " *Id.* at 569 n.3.

The district court dismissed for lack of jurisdiction. The Fifth Circuit reversed on the issue of jurisdiction (though it later dismissed the case on other grounds). In doing so, it analyzed our circuit's collateral attack cases and concluded that the reasoning of the *Mace* line of cases did not apply to Zephyr:

> While we agree that parties may not avoid administrative review simply by fashioning their attack on an FAA decision as a constitutional tort claim against individual FAA officers, we disagree with the Defendants that this case implicates that concern. Zephyr's claims do not relate to an FAA order currently pending against it. Indeed, to the extent that Zephyr sought review of the FAA's attachment of a condition notice to the Jet, its complaint would be moot since the FAA has removed the condition notice.

*Id.* at 572.

The Fifth Circuit concluded that no exhaustion was required and the district court had jurisdiction over Zephyr's claim for "monetary relief for alleged extra-procedural and unconstitutional actions by FAA inspectors," because the cases barring collateral attacks on FAA orders "have no application to cases like this one that do not implicate an FAA order that is currently in place and hence could not function

as a collateral attack on an FAA order or action." *Id.* We agree with the Fifth Circuit that it makes little sense to apply the collateral attack doctrine to situations in which no FAA order is "currently in place." *Id.*

**[12]** The second reason the collateral attack rule does not apply to this case is that there is no danger that Jan's and Americopters would be able to re-litigate, in district court, previous agency determinations because there were no such determinations. One rationale for the "collateral attack" doctrine is to prevent plaintiffs from using constitutional tort claims to re-litigate previous administrative hearings, *Tur*, 104 F.3d at 292, or to evade administrative procedures. *See Green*, 981 F.2d at 517, 521. In *Tur*, for instance, we held that the district court had no jurisdiction to hear a damages claim because the result would be a "new adjudication over the evidence and testimony" already considered by an ALJ and NTSB. 104 F.3d at 292.

Jan's and Americopters are not in danger of committing either foul. They did not attempt to evade the FAA's administrative procedures. To the contrary, their attempts to invoke the administrative process were resisted by the FAA at every turn. Nor can their claims be construed as an attempt to re-litigate anything—for the word "re-litigate" assumes that there was some form of previous adjudication. Because of the FAA's repeated refusals to provide Jan's and Americopters any hearing at all, this case is unlike *Tur* or cases upholding district court jurisdiction. By considering Jan's and Americopters' claims, the district court would not disturb any prior agency fact-findings based on testimony and documents, since there were none.

**[13]** None of the rationales for the collateral attack doctrine will be advanced by denying district court jurisdiction over the damages claims here. Denying jurisdiction because a federal court claim is "inescapably intertwined" with an administrative proceeding or order perforce presumes the existence of

something with which that claim could be intertwined. Because there is no pending FAA order and because there were no previous agency determinations on the merits, no foundation supports the notion of "intertwining." Thus, the district court erred in determining that the due process claims were "inescapably intertwined" with direct challenges to FAA orders. The district court has jurisdiction to consider constitutional claims for damages.

## Conclusion

The petitions for review are DISMISSED for lack of jurisdiction. We AFFIRM the district court's dismissal of the complaints, except the constitutional claims for damages (takings claims), with regard to which we REVERSE and REMAND for further consideration.

No. 04-70330 & 04-70348 (petitions): DISMISSED.

No. 04-15097 & 04-15098 (appeals): AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

Each party shall bear its own costs on appeal.